Gaston, J.
 

 It is not very clear, upon the allegation in the petition, whether the complaint of injury, therein set forth, to the health of the petitioner’s family, because of the miasma and other noxious exhalations, arising from the stagnant water of the defendant’s pond, is a substantive distinct gravamen, independent of the complaint, that the petitioner’s land has been overflowed by the waters ofthe defendant’s pond — or is brought forward as a further and incidental injury, consequent upon the wrong of overflowing the petitioner’s land. If we were
 
 *335
 
 bound to regard it in the latter point of view, we should be obliged to hold the instruction of his Honor, herein set forth, erroneous ; for supposing the petitioner’s land not overflowed by the defendant’s porid, the wrong complained of did not exist.
 
 Bridges
 
 v.
 
 Purcell,
 
 1 Ired. 232. But the petition may be understood as charging two wrongs distinct from each other, whereof one might exist and not the other, viz: that the defendant’s dam threw back the water of his pond upon the petitioner’s land, and, also, that the stagnant water of the defendant’s pond injuriously affected the health of the petitioner’s family. If the petition can be thus interpreted, the instruction complained of brings directly before us a question, which we feel to be not free from difficulty, which has more than once been the subject of conference amongst us, and on which we have heretofore sedulously abstained from pronouncing, because heretofore it has not been necessary to pronounce, any authoritative opinion.
 

 The 74th chapter of the revised statutes on “mills and millers,” puts together in a condensed form all the enactments, contained in the acts of 1809, ch, 773; 1813, ch. 863, and of 1833, ch. 6. In describing “ the person,” authorised and directed to
 
 prosecute his
 
 complaint in the manner herein prescribed, the language of the legislature is very broad. “Any person who may conceive himself injured by the erection of any public grist mill, or mill for ^domestic manufactures or other useful purposes, and be desirous of recovefmg"clamages from the owner or proprietor of any such mill, shall apply by petition to the court of Pleas and Quarter Sessions of the county in which the land, to which the damage is done, is situate, setting forth in what respects he is injured by the erection of said mill.” It can scarcely be questioned, however, notwithstanding the generality of this description, that it does not embrace every person, who may sustain an injury by the erection of a mill. The petition must be brought in the court of the county, wherein is situate, “the land to which the damage is done.” The
 
 complaint,
 
 therefore, and the only complaint, to be redressed by the special mode of proceeding, point
 
 *336
 
 ed out in the statute, is a complaint by the owner of land of damage done thereto by the erection of a mill. In all other
 
 cases
 
 of injury to individuals from the erection of mills, the gtatutejs silent; and, whenever such injuries exist, the remedy therefor must be pursued, as it might be pursued, before the legislature interfered with the subject.
 

 Considering this interpretation of the statute
 
 so
 
 far, undoubtedly correct, we proceed to enquire what, within the meaning of the Legislature, is the case of “damage done to the land” by the erection of a mill. Is it the case of damage done to land by the overflowing thereof with the water of a mill pond, or does it embrace also every case of injury to the proprietor of land, by reason of the proximity of such mill? There are many reasons, which induce the majority of the court to hold, that the statute applies, and the statutory remedy is given,
 
 only
 
 in the case first mentioned.
 

 Such appears to us the fair inference from the ordinary sense of the words, “ damage done to the land.” In technical language, the injury
 
 to the
 
 proprietor, resulting from throwing upon his land the water from another’s pond, is but indirect and consequential. But as
 
 the land
 
 is immediately injured by the water thus thrown upon it, such injury is very properly termed a damage
 
 done to the land
 
 itself. Whereas, the mischievous consequences, that may result to the health, comfort or convenience of the citizen, by reason of the nearness of a mill to his place of residence, although because of such consequences, the value of the land as a place of residence may be impaired, are, assuredly, not aptly or usually described as “ damage done to the land.” The peculiar provisions, as to the mode of trial, directed by the statute, seem to strengthen this view of the question. It is made the duty of the court to order a jury to be summoned to meet on the premises, who shall view and examine the premises, and hear all the evidence, which may be produced on both sides, and then make up their verdict, as to the sum which the petitioner is to receive, as an annual compensation for the damage he sustains, by reason of the erection of the mill complained of.
 
 *337
 
 In every instance of a complaint under this statute, there
 
 must
 
 be a'jury summoned to meet upon the premises; this jury"
 
 must
 
 view and examine the premises ; and the verdict of this jury, rendered upon such view and examination and the testimony of the witnesses brought before them by the parties, is conclusive in the County Court. Where the wrong complained of is the drowning of the petitioner’s land,, the propriety of a jury to view and examine the place damaged, is obvious. They see the wrong done, and examine into its nature and extent, and nothing is more certain than that we apprehend more strongly and clearly what is subjected to our senses, than that which is communicated by others, as having been learned through the medium of their senses. But when no
 
 visible
 
 wrong has been committed, a jury “ to view and examine the premises,” is an incongruous and a needlessly troublesome and expensive proceeding. It is true, that the jury is also to hear the witnesses, which the parties may bring before them. This, in
 
 every
 
 case, is a necessary provision. It may be needed to show the boundary of the petitioner’s land, or the value of the timber destroyed, or many other facts not obvious on the view, and yet very important to be also considered in determining the verdict. But, above all, it Í3 essential in enabling the jury to estimate the
 
 incidental
 
 damages, which the petitioner sustains, as consequent or likely to follow upon the wrong done* For we regard it as settled, that when
 
 the case made
 
 is one fit for the determination of the special tribunal constituted by the statute, that tribunal is to determine the whole extent of the
 
 petitioner's
 
 injury in the case so made. It is their duty, in the language of the statute, “ to inquire whether
 
 the petitioner
 
 has sustained
 
 any
 
 damage by reason of the erection of the mill,” and if he has, “ to make up their verdict as to the sum which the petitioner is to receive, as an annual
 
 compensation
 
 for the damage
 
 he
 
 sustains, by reason of the erection of the mill complained of.” If the petitioner’s land is overflowed by the water thrown upon it by reason of the defendant’s mill, he is entitled and obliged to seek
 
 his
 
 compensation in the manner directed by the statute, And
 
 *338
 
 when he does seek it before a tribunal competent to award it, that tribunal is found to give' a
 
 full
 
 compensation for all the injury he has sustained
 
 thereby,
 
 whether it 'be more or less .■ w¡lether it affect his dominion in the land by taking away its use, or impair the value of that dominion by rendér-ing the land unfit or less fit for a place of residence, or whether the injury, reaching beyond its immediate mischiefs, extends also to the person or the personal property of the petitioner.
 

 It will be seen, tooy on examining the statute, that it is provided, that the verdict rendered by the jury of view shall be binding between the parties' for the term of five years, unless the damages be increased by raising the waters, or otherwise
 
 “if said mills are kept up.”
 
 Now, these last words are not 'To be understood in a strictly literal sense, for, assuredly the legislative willy is not to put down mills which
 
 dono
 
 damage. It is not the keeping up of a mill
 
 as'such,
 
 whereof the petition-* ér complains, and for which he is entitled to compensation, but the keeping Up of á mill which does damage to his land — or at all efents does damage to him. It is the keeping up of the
 
 ivater
 
 of the pond or stream, on which the mill is erected, which'does all this damage. This provision, therefore, clearly indicates that, in the contemplation of the legislature,- there was a certain height of water which might'be kept up without can'sing thé damage, for which the annual sum stated in the verdict, was given as a Compensation — and that whenever the water was permanently reduced below this height, the collection of more money thereafter by reason of the verdict ought to cease. In the interpretation of the statute, which we adopt, there is a practical and easy standard, by which to ascertain, whether the water be above or below this legal height, the moment the alleged reduction is made, that is to say, has or has hotth'e water been so brought down, as no longer to overflow any part of the petitioner’s land. But if we suppose the statute embraces the case, where no land of the petitioner' has been overflowed, but his health or that of his family has been affec-'téd, becáübé 'of the nearness of the ■ defendant’s pond, it isim-possible to ascertain, a
 
 priori,
 
 how low the water of the pond
 
 *339
 
 must be reduced, and how far the pond itself- removed, before. the damage, for which the annual, compensation is given, ceases. Until there shall have been some definite information, collected by experience, th.e ascertainment of this matter must be purely conjectural.
 

 Nor do we deem it irrelevant, in the prosecution of this inquiry, to notice, that in the ,a,ct of .1813, ch. 863, wherein the legislature extendedlomersons. injured by the erection of mills for manufacturing or other purposes, the benefit of the enactments in the first act of 1809,
 
 c.773^
 
 in behalf of those injured by
 
 public
 
 mills, the language used, shews explicitly what they supposed to b,e the ease
 
 e)nbrac.ed in the original act.
 
 That language is, «that the owners of lands, which shall be
 
 overflowed
 
 by reason of the erection of mills for domestic manufactures or other useful purposes, shall have the
 
 same remedy
 
 against the person, erecting such mills, or the owners thereof, as is given by the said act against the person or persons erecting grist mills, or the owners thereof.”
 

 It is ¡conceded on all hands, that if the case of overflowing land, by reason of the erection of a mill, was not the only one intended by the legislature to be provided for, in the peculiar remedy given by the statute, it was the one
 
 principally
 
 within their contemplation. Suits were comjrion between the owners of adjoining lands, and the proprietors of mills, because of the lands of the former being drowned by the mill-ponds of the latter. For the slightest, as well as the most serious injury of this kind, the remedy was the same, an action on the case repeated time after time, until the nuisance were put down or one or the other of the parties ruined in the controversy. It was unquestionably because of the mischiefs real or supposed, which were disclosed by suits of this description, that the legislature interfered by providing a new remedy, which it was their will should be pursued instead of the former one. Now, when we take into consideration-the fact that no suit, as far as our knowledge or information extends, had ever been brought in this State to recover damage because of injury from the erection of a mill, except where there had been an overflowing
 
 *340
 
 of the plaintiff’s land,
 
 or some part thereof, this fm-
 
 n*s^es a strong reason, in addition to those already mentioned, to compel the conviction, that no other case than one of a dam* ^ jan(j gQ occasione¿ was within the contemplation of the legislature, or can be construed by us to be within the purview of their enactments.
 

 It is the opinion of the court, that there is error in the in-stuction given, that the judgment must therefore he reversed, and a new trial awarded.
 

 Per Curiam, Judgment reversed, and
 
 venire de
 
 novo,